UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>EFRAIN SUAREZ DELGADO,<br><br>              Defendant. | No. CR-04-188-FVS<br><br>ORDER DENYING MOTION FOR NEW TRIAL |

**THIS MATTER** came before the Court on April 26, 2005, based upon Efrain Delgado's motion for a new trial.

**BACKGROUND**

Law enforcement officers arranged for an informant to purchase four kilograms of cocaine from Vidal Escamilla-Torres. He agreed to bring the cocaine to the informant's apartment. Prior to his arrival, officers placed a video camera in a position that enabled them to record events unfolding in the livingroom. In addition, Detective Jay McNall and another officer hid in a bedroom. Mr. Escamilla-Torres and two other men -- Efrain Suarez Delgado and Jesus Mendoza-Bautista -- drove to the informant's apartment and entered together. Mr. Escamilla-Torres exchanged cocaine for cash. Much of the transaction was recorded by the camera. Among other things, the video showed Mr. Escamilla-Torres hand a significant quantity of cash to Mr. Mendoza-Bautista, who, in turn, handed some of the cash to Mr.

ORDER DENYING MOTION FOR NEW TRIAL - 1

Delgado.  Shortly thereafter, law enforcement officers arrested all three.  Each was charged with conspiracy to distribute cocaine, 21 U.S.C. § 846, and distribution of cocaine.  21 U.S.C. § 841(a)(1).  Mr. Escamilla-Torres pleaded guilty to Count 2.  Mr. Delgado and Mr. Mendoza-Bautista each exercised his right to a jury trial.  Mr. Delgado was represented by George Paul Trejo, Jr.  Mr. Mendoza-Bautista was represented by Ronald A. Van Wert.  The government was represented by Assistant United States Attorney Ronald W. Skibbie.

At trial, Detective Jay McNall testified both as an expert witness and as a fact witness.  In his capacity as an expert witness, he opined that drug traffickers will not complete transactions in the presence of persons who are not involved.  (Transcript of Testimony at 279-81.)  Mr. Trejo discussed this opinion during his closing argument:

> Simply because Detective McNall tells you someone wouldn't be there at a drug deal unless they're involved, does not make it true.  If it did, we wouldn't be here.  If it did, the Court would not have instructed you on the law concerning mere presence and knowledge not being enough to convict someone and how mere association with someone who you know is involved in criminal activity, in and of itself, is not enough.

(Transcript of Closing Arguments at 37.)  Mr. Skibbie responded briefly to this argument during rebuttal:

> What was the testimony of Detective McNall?  Strangers aren't at dope deals.  The people who are involved in the drug transaction are at dope deals.  This is the same detective who indicated that he has done hundreds of narcotics search warrants; and he has done over a hundred undercover, dangerous situation buys on the street.

*Id.* at 80.

Besides testifying as an expert, Detective McNall also testified

ORDER DENYING MOTION FOR NEW TRIAL - 2

as a fact witness. In that capacity, he described numerous aspects of the investigation, including the events that led up to Mr. Delgado's arrest in the informant's apartment. As explained above, McNall and another officer were hiding in a bedroom. McNall said he could hear the sound of voices coming from the other room, but acknowledged he could not discern what the speakers were saying. (Transcript of Testimony at 304, 417-18). Mr. Trejo discussed this testimony during his closing argument:

> You know, it may have seemed somewhat monotonous for me to ask Detective McNall, I said, well do you have, when they were in, in the apartment, did Mr. Delgado ever talk about drugs? No. And, you know, they say, well, we couldn't hear. Maybe yes, maybe no. That's a small apartment. They were in the room right next door. Do you think that the detectives that are inside the room are just standing there in the room not attempting to listen to the conversation?
> Do you think that these individuals, Mr. Vidal and Sam Lockett, were in the apartment whispering? So that nobody could hear? If Mr. Delgado was talking, they would have heard. But there are no statements, this is the significant part of it, prior to the deliver; there were not statements by Mr. Delgado introduced into evidence; there were no statements that he made to Mr., Mr. Lockett.

(Transcript of Closing Arguments at 46-47.) During rebuttal, Mr. Skibbie took exception to this argument:

> There is a suggestion that the detective, Detective McNall was in this apartment and he said he couldn't hear what was going on. If you recall, it was a two bedroom apartment with a kitchen, a living room, a bathroom. Detective McNall indicated that he was in the back bedroom. And there was a very strong suggestion made that Detective McNall was not being truthful when he testified when he said he could not hear what was going on.
> *I would suggest to you that the evidence reflects, that's really crossing the line to suggest that Detective McNall has given you anything untruthful during the course of this trial.*

*Id.* at 82 (emphasis added). Mr. Trejo objected to Mr. Skibbie's

ORDER DENYING MOTION FOR NEW TRIAL - 3

assertion that he had somehow crossed a line by attacking Detective McNall's credibility:

> Objection to the characterization "crossing the line." There's no crossing the line going on, Your Honor, and that's improper argument.

*Id.* The Court overruled Mr. Trejo's objection. Mr. Skibbie completed his rebuttal and the Court excused the jury to begin its deliberations. At that point, Mr. Trejo moved for a mistrial. *Id.* at 92. The Court denied his motion. *Id.*

Mr. Delgado moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). In order to fully understand the basis of Mr. Delgado's motion, additional background is needed. During trial, Mr. Skibbie became concerned about the tone of certain comments Mr. Trejo was making. As a result, Mr. Skibbie spoke to Mr. Trejo during a recess. Mr. Trejo assured Mr. Skibbie he did not intend to impugn Mr. Skibbie's integrity and he would say as much during his closing argument. Mr. Trejo insists he fulfilled this pledge. Having done so, he was dismayed when, during rebuttal, he heard Mr. Skibbie say his discussion of Detective McNall's testimony had crossed the line. Not only did Mr. Trejo perceive this remark as an attack upon his integrity, but also he saw it as an effort on the part of Mr. Skibbie to vouch for Detective McNall's credibility.

**RULING**

A district court may grant a new trial when "the interest of justice so requires." Fed.R.Crim.P. 33(a). Mr. Delgado's claim of prosecutorial conduct must be examined in light of the record as a whole. *United States v. Younger*, 398 F.3d 1179, 1190 (9th Cir.2005).

In order to qualify for a new trial, he must demonstrate the prosecutor engaged in misconduct and, more probably than not, the prosecutor's misconduct materially affected the verdict. *United States v. Cooper*, 173 F.3d 1192, 1203 (9th Cir.1999).

Mr. Delgado argues Mr. Skibbie's comment about "crossing the line" amounted to vouching for the credibility of Detective McNall. "Improper vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *Younger*, 398 F.3d at 1190 (internal punctuation and citations omitted). Contrary to Mr. Delgado, Mr. Skibbie's comment did neither of these things. Thus, it cannot fairly be construed as vouching.

Mr. Delgado also argues Mr. Skibbie's "crossing the line" comment impugned his attorney's integrity. According to Mr. Delgado, the remark clearly implied Mr. Trejo had done something unethical by challenging Detective McNall's credibility. Depending upon the circumstances, a comment by a prosecutor impugning the integrity of defense counsel may constitute misconduct. *United States v. Santiago*, 46 F.3d 885, 892 (9th Cir.1995). However, Mr. Skibbie's comment does not rise to that level. To begin with, he did not clearly impugn Mr. Trejo's integrity. Instead, his comment reasonably can be construed as an assertion that Mr. Trejo's attack upon Detective McNall's credibility simply was not supported by the evidence. Furthermore, Mr. Trejo invited Mr. Skibbie's comment by attacking Detective McNall's credibility. *See United States v.*

ORDER DENYING MOTION FOR NEW TRIAL - 5

*Sayetsitty*, 107 F.3d 1405, 1409-10 (9th Cir.1997).

Even if Mr. Skibbie's comment was improper, Mr. Delgado has failed to demonstrate, more probably than not, that the comment had a prejudicial affect upon the verdict. As noted above, Mr. Trejo objected to the comment. Although the Court overruled the objection, the Court reminded jurors it was their responsibility to determine "what occurred in the way of facts and what happened in this case." Moreover, Mr. Skibbie did not repeat the remark. Viewed against the record as a whole, the remark was, at most, an isolated comment. *See United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir.1986).[1]

**IT IS HEREBY ORDERED:**

Mr. Delgado's motion for a new trial (Ct. Rec. 93) is denied.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this   28th    day of April, 2005.

                    s/ Fred Van Sickle
                    Fred Van Sickle
            Chief United States District Judge

---

[1] Mr. Delgado also alleges the government withheld information that should have been disclosed prior to trial. Having carefully reviewed the record, the Court finds the government fulfilled the discovery obligations imposed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Federal Rule of Criminal Procedure 16(a).

ORDER DENYING MOTION FOR NEW TRIAL - 6